ORRIN ABBEY v. ADAM LONG, *et al.*

1. CORPORATION — *Proceeding Against Stockholder — Claims as Set-off.* In a proceeding by a creditor of a corporation against a stockholder thereof, under a statute making the stockholder liable to the creditor for the amount of his stock, in addition to any sum due thereon, said stockholder cannot purchase claims against the corporation at a discount, and then set them off against his liability at their face value. He can only set off such claims, in discharge of his liability, to the amount actually paid by him therefor.

2. ———— *Costs.* In such a proceeding, if the stockholder contest his liability, and the contest is decided against him, it is not error to tax the cost of such proceeding against him.

*Error from Republic District Court.*

THE opinion contains a sufficient statement of the case.

*W. T. Dillon,* for plaintiff in error.

*Caldwell, Ellis & Cook,* for defendants in error.

Opinion by STRANG, C.: This proceeding was begun by the plaintiffs below, in the district court of Republic county,

to obtain an order for an execution against the property of Orrin Abbey as a stockholder in the Republic County Co-operative Association, a corporation against which the plaintiffs below had a judgment. December 23, 1887, the defendants filed in the district court of Republic county a motion asking an order directing an execution to issue against the property of the plaintiff as a stockholder in said corporation, to satisfy a judgment in their favor against said corporation. December 24, 1887, notice of said motion was served upon the plaintiff. June 1, 1888, the motion was heard and allowed by the court, and execution awarded in the sum of $139.65, and costs of the proceeding, taxed at $2.10. The defendant objected to the allowance of the order, and excepted; and moved the court. to set said order aside and grant a new hearing, which motion was overruled and exception allowed. The plaintiff asks to have the order of the district court allowing execution to issue, reversed, because—first, the order is contrary to the evidence; second, is contrary to law; third, court erred in taxing the cost of the proceeding against the plaintiff in error.

The undisputed evidence shows that the Republic County Coöperative Association, Patrons of Husbandry, was, at the time this proceeding was begun, a corporation organized for other than railway, religious or charitable purposes; that the defendants had a judgment against said corporation upon which there was $201.80 due and unpaid; that the plaintiff was a stockholder in said corporation owning stock to the amount of $250, par value; that execution had issued upon the judgment of the defendants against said corporation and been returned by the sheriff with an indorsement thereon, that he had made diligent search and could find no property of any kind belonging to said corporation, defendant, on which to levy the execution; that the corporation owed other creditors the following sums: C. R. Barnes Milling Company, $135.97; Samuel Bliss, $8.29; D. H. Sallinger, $33.99; Chase Brothers, $35.21; Inglehart, Winning & Co., $36.46; that each of said claims had in fact been assigned to W. T. Dillon, and that W. T. Dillon had upon the back of each of said assignments

44—44 KAS.

receipted to the plaintiff the amount assigned. It is agreed that the claims assigned to Dillon, and by him receipted to the plaintiff, were purchased by Dillon for less than their face value, and that the full sum paid therefor was $110. It is admitted that there were other responsible stockholders of said corporation from whom the claim of the defendants could be made. The record shows that Dillon was the attorney of the plaintiff in this proceeding and employed by him to look after his interest as a stockholder in said corporation at the time that Dillon purchased and took the assignment of the claims receipted by him to the plaintiff.

The disputed question of fact in the case is: Was Dillon acting for the plaintiff in purchasing the claims assigned to him (Dillon), and therefore took them for the plaintiff, notwithstanding he took the assignments in his own name; or was he acting for himself, without any understanding with the plaintiff, and independent of him?

This question the trial court resolved against the plaintiff, holding that Dillon was acting for him, as his agent, in purchasing the claims assigned to Dillon, and by him receipted to the plaintiff. This is the ruling complained of in the first assignment of error. A careful examination of the evidence of the plaintiff and Mr. Dillon satisfies us that the court below was justified in its conclusion that Dillon acted for the plaintiff in purchasing claims against the corporation. The character of the evidence leads irresistibly to that conclusion. Dillon was plaintiff's attorney, and had advised him in relation to his liability as a stockholder in said corporation before the motion in this proceeding was filed; had talked with plaintiff about the effect of plaintiff's purchase of claims against the corporation at less than their face value. When he purchased the claims, though he took an assignment of them in his own name, he bought them with the plaintiff's money. It is true, he says he borrowed the money of the plaintiff; but all the evidence, taken together, upon that subject, hardly supports that theory; but, on the contrary, shows that the plaintiff, having been informed by Mr. Dillon that it was

at least doubtful whether if he (the plaintiff) purchased claims against the corporation at a discount, he could claim credit for their face value, arranged with Dillon to furnish him (Dillon) with the money to buy the claims, with the understanding that Dillon should take assignments of the claims to himself, and receipt them to the plaintiff. The trial court heard the evidence, and came to this conclusion, and we are unable to arrive at any different understanding from the evidence as it appears in the record. The plaintiff, therefore, so far as the further consideration of this case is concerned, purchased claims against the corporation of which he was a member, amounting, as per face value, to $249.70, at a discount, paying therefor the sum of $110.

The further question in this case therefore is, can a stockholder in a corporation like this purchase claims against the corporation at a discount, and then obtain credit for them at their face value in satisfaction of his liability as a stockholder to creditors of the corporation? We think not. The statute creating a liability on the part of the stockholder guarantees to the creditor of a corporation a trust fund, in the hands of the stockholders, liable for the ultimate payment of the corporation debts. The law says you may combine your capital, create a corporation, relieve yourselves of the common-law liability of co-partners, and obtain the many other advantages growing out of corporate existence; but, as a protection to the public, in lieu of the partnership liability you escape, you shall be held not only liable to the corporation and creditors for the full amount of your stock subscribed, but to guarantee further protection to creditors of the corporation, you shall, if the corporation itself becomes insolvent, be charged with a further liability to such creditors equal to the amount of your stock in the corporation. This liability may be discharged by payment on execution issued pursuant to the statute, as in this case. The authorities also hold, as a matter of equity, that such liability may be discharged by a voluntary payment by the stockholder, in good faith, of the just debts of the corporation equal to the amount of the stock held by him in the

corporation. This method of discharge from liability has its origin in and is based entirely upon equity; it being held, that as no creditor has any exclusive right to the fund in the hands of any individual stockholder before execution issues, the voluntary and *bona fide* payment, in good faith, of a just debt of the corporation equal to the amount of stock held by a stockholder, is, in equity, equivalent to the payment of so much on an execution issued under the statute. But as this method of discharge depends upon equity for its existence, the voluntary payment, to operate as a discharge, must be a *bona fide* payment of a just debt, and made in good faith.

"A stockholder who has voluntarily paid corporate debts to the full extent of his statutory liability is entitled to set up that fact. And when such a payment was *bona fide*, it is a bar to an action to collect any further amount." (Cook, Law of Stocks, § 227c.)

"A stockholder who is individually liable to the amount of his stock in favor of creditors of his corporation may discharge such liability by the payment, in good faith, of the amount of the same to any creditor who is not also a stockholder. But he cannot discharge it by buying up debts owing by the corporation, equal in amount to his liability, at a discount. In such case, if he retain such indebtedness so purchased by him, he can only claim a discharge for the actual sum paid by him for the same." (*Thompson v. Meisser*, 108 Ill. 359.)

If any but a *bona fide* payment in good faith by a stockholder were allowed, stockholders of a corporation, who would know of the insolvency of their corporation in advance of creditors, would be able by a little sharp practice to rid themselves to a large extent of liability by purchasing claims against the corporation at a discount, and thus rob creditors of a like amount of the protection guaranteed them by statute. This plan of discharge would also be against public policy, as tending to destroy public confidence in corporations. (*Lingle v. Insurance Co.*, 45 Mo. 109.)

"In an action to charge a stockholder with a corporate debt, defendant cannot set up as a defense that he has purchased judgments against the corporation aggregating the amount of

his liability, without showing that he paid for the judgments the full amount for which they were recovered." (*Bulkley v. Whitcomb*, 1 N. Y. Supp. 748.)

"Nor will a shareholder, who has employed an agent to buy up claims at a discount and then confessed judgment in favor of the agent, be permitted to plead such judgment in bar of an action by another creditor." (*Manville v. Karst*, 16 Fed. Rep. 175.)

"Payment of the judgment at a discount is no exhaustion of the liability, though the judgments at full value would have exhausted it." (*Kunkleman v. Rentchler*, 15 Ill. App. 271.)

"Neither may a shareholder himself buy any claims at a discount and set them off at their face value in an action to enforce his statutory liability to creditors."

*Gauch v. Harrison*, 12 Ill. App. 459; *Diven v. Phelps*, 34 Barb. 224; *Balch v. Wilson*, 25 Minn. 299; *Smith v. Mosby*, 9 Heisk. 501.

The plaintiff complains that the cost of the proceeding in the district court was taxed to him. If when notice was served on him he had paid the plaintiff below the amount of his liability, he probably should not have been required to pay any cost. But when he went into the district court and contested the right of the plaintiff below to recover from him, and the matter was decided against him in that contest, it was proper, we think, to tax the cost of such proceeding against him.

For the reasons above given, it is recommended that the judgment of the district court be affirmed.

By the Court: It is so ordered.

All the Justices concurring.